UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Michael Hanson

    v.                                          Case No. 14-cv-132-SM

New Hampshire State Prison
Literary Review Committee et al.[1]


**REPORT AND RECOMMENDATION**

Michael Hanson has filed this action, pursuant to 42 U.S.C. § 1983, asserting violations of his First Amendment rights and his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Defendants moved for summary judgment (doc. no. 31), Hanson objected (doc. no. 34), and defendants replied (doc. no. 35). Pursuant to LR 72.1, the motion for summary judgment is before this magistrate judge for a report and recommendation.


**Background**

Defendants have moved for summary judgment on each claim remaining in this case, specifically the following claims:

---

[1]The defendants who have been served in this action are: the New Hampshire State Prison ("NHSP") Literary Review Committee ("LRC"), NHSP LRC Chairperson Scott Bungay, (former) NHSP Warden Richard Gerry, New Hampshire Department of Corrections Commissioner William Wrenn, NHSP Lt. John Masse, and NHSP Corrections Officer James Azzara.

1.   Defendants violated Hanson's (a) First Amendment free exercise and (b) RLUIPA rights, by denying him access to all or part of a book entitled, Shaolin Master's Text: History, Philosophy, and Gung Fu of Shaolin Ch'an, Revised Edition ("Shaolin Text").

2.   Defendants violated Hanson's First Amendment free speech rights by denying him access to the Shaolin Text and to a book entitled, Sailing a Serious Ocean ("Serious Ocean"), which were mailed to Hanson at the New Hampshire State Prison ("NHSP").

3.   Defendants, by denying Hanson access to his legal papers and causing him to lose an appeal in the First Circuit, violated Hanson's First and Fourteenth Amendment rights to access the courts.

Except as otherwise indicated, the following facts relating to those claims are undisputed.

I.   Facts Concerning Access to the Courts Claim

A.   Hanson's Legal Paperwork and First Circuit Case

Hanson was an inmate in the custody of the New Hampshire Department of Corrections ("DOC") from August 2012 until his recent release from incarceration.   Doc. Nos. 31-1, at 2; 41. On June 25, 2013, while he was incarcerated at the NHSP, Hanson was transferred to the Reception and Diagnostic Unit ("R&D") of that facility.   Doc. No. 31-16, at 2.   Pursuant to DOC policy, Hanson's personal property was not moved with him.   Hanson's personal property included his legal paperwork.   Compl., Doc. No. 1, at 12.   On July 1, 2013, Hanson submitted an Inmate

Request Form ("IRS") to NHSP Corrections Officer James Azzara, who was in charge of the NHSP Property Room, and requested his personal property. Doc. No. 31-16, at 2. Hanson's property was not there at the time, and Azzara so notified Hanson on July 2, 2013. Id.

On July 18, 2013, Hanson was transferred from R&D to the NHSP's Secure Housing Unit, and Hanson's property was dropped off at the NHSP Property Room.[2] Id. Six days later, on July 24, 2014, Hanson was transferred to the Northern New Hampshire Correctional Facility ("NCF"). Id. It is undisputed that, at the time of his transfer to NCF, Hanson had been separated from his personal property, including his legal paperwork, since June 25, 2013.

Hanson sent an IRS to Azzara, dated August 21, 2013, stating that he had not yet received his personal property, including his legal paperwork, at NCF. Doc. No. 31-16, at 3. Ordinarily, when an inmate is transferred from the NHSP to NCF, if there is no room for the inmate's property in the transport van, the property is transported at a later date, when there is space in the transport van. Id. at 2-3. On September 11, 2013,

---

[2]The record does not reflect where Hanson's property was, between his transfer to R&D on June 25, 2013, and its arrival at the Property Room on July 18, 2013.

3

Hanson's property was still in the NHSP property room, and so Azzara personally drove to NCF to deliver Hanson's property to that facility.  Id. at 3.

On July 25, 2013, Hanson directed an IRS to the NCF law library, stating that he had "multiple open cases with deadlines within the next week," citing open cases he had in the New Hampshire Supreme Court and New Hampshire Superior Court.  Doc. No. 31-15.  In response, the NCF law librarian scheduled Hanson for two hours a day of library time every Tuesday, Wednesday, and Thursday in August.  Id.

Although not mentioned in his IRS to the NCF librarian, at the time he was transferred to NCF, Hanson had an appeal of a civil rights action pending in the First Circuit.  See Hanson v. Church, No. 13-1205 (1st Cir.).  In that case, the First Circuit had issued an Order on July 12, 2013, directing Hanson to file an opening brief on or before August 21, 2013.  Id.  Hanson failed to respond to that notice, and, on September 26, 2013, the First Circuit dismissed Hanson's appeal because he failed to file a brief.  Id.  Hanson claims here that he lost his appeal as a direct result of the denial of access to his legal paperwork between June 25, 2013, and September 11, 2013.  Compl. Doc. No. 1, at 12.

4

B.   Hanson's Exhaustion Efforts

Between July 1 and September 1, 2013, Hanson submitted
several IRS forms seeking access to his paperwork which stated
that he needed that material to work on open legal cases.  Decl.
of Cynthia Crompton ("Crompton Decl."), Doc. No. 31-13, at 2.

Between September 1, 2013, and March 31, 2014, Hanson filed
a number of IRS forms, but "none of them claimed that a lack of
access to his legal paperwork had interfered with his ability to
work on any court case."  Crompton Decl., at 2.  Between July 1,
2013, and March 31, 2014, Hanson did not submit "any request
slip or grievance about the withholding of any personal
property, including legal paperwork, or stating that Mr.
Hanson's lack of access to legal paperwork had interfered with
his ability to work on any court case" to the NHSP Warden.
Decl. of Gail Mansur, Doc. No 31-25, at 2.  Hanson did not
submit any grievances to the NCF Warden between June 1, 2013,
and January 31, 2014.  Decl. of Diane Bouthot, Doc. No. 31-30.
Hanson did not submit any grievances to the DOC Commissioner
between June 1, 2013, and March 13, 2014.  Decl. of Leslie
Bartlett, Doc. No. 31-28.

II.   <u>Facts Related to RLUIPA and First Amendment Claims</u>

On December 31, 2013, the NHSP Property Room received a package addressed to Hanson from Amazon, containing two books, the <u>Shaolin Text</u> and <u>Serious Ocean</u>.   <u>See</u> Doc. No. 31-16, at 3. Pursuant to DOC Policy and Procedure Directive ("PPD") 5.26, entitled "Inmate Mail Service," Azzara opened the package to examine the materials and determine whether they violated any of the DOC's rules governing inmate correspondence and property. Doc. No. 31-16, at 4.

When an officer receives a package for an inmate, PPD 5.26(IV)(B)(2)(h) requires the officer to forward that material to the Literary Review Committee ("LRC"), if the officer believes the package contains written material that might "encourage activities which may lead to the use of physical violence."  Doc. No. 31-21, at 2.  Azzara forwarded both the <u>Shaolin Text</u> and <u>Serious Ocean</u> to the LRC, as he understood PPD 5.26 to require that the LRC receive all of the written material contained in a package that contained some questionable written material.  Decl. of James Azzara ("Azzara Decl."), Doc. No. 31-16, at 4.

In early February 2014, Azzara received a notice from the LRC indicating that it had rejected the <u>Shaolin Text</u>.  Azzara

6

Decl., at 5.  The notice did not mention <u>Serious Ocean</u>.  Upon

receipt of the LRC's notice, Azzara sent Hanson a "5-Day Notice"

indicating that both of the books had been rejected.  Azzara

Decl., at 5-6.  Defendants have filed a Declaration of Maj. Jon

Fouts, indicating that Azzara's understanding of PPD 5.26 in

2014 was consistent with DOC policy at that time:

> Per DOC policy at that time, the effect of [the LRC]
> decision would have been to deny Mr. Hanson access to
> both books, even though the LRC did not separately
> determine whether the <u>Serious Ocean</u> book violated the
> DOC's standards.  Specifically, DOC policy was that,
> if an inmate received a package containing a
> publication or other piece of written material deemed
> unacceptable by the LRC, then the inmate was not
> allowed access to any of the materials in the package.
> One of the purposes served by this rule was to help
> DOC staff avoid getting into disputes with inmates or
> their correspondents about the contents of packages of
> mail and other written materials sent to the NHSP.
> Those kinds of disputes are more likely if DOC staff
> are required to remove some written material from a
> package because it is unacceptable under PPD 5.26 but
> then provide the rest of the contents to the inmate.
> They are less likely if the entire contents of any
> package containing a single piece of unacceptable
> written material are simply returned to the sender,
> picked up by a third person, or destroyed at the
> inmate's direction.

Decl. of Jon Fouts ("Fouts Decl."), Doc. No. 31-2, at 2.

On February 4, 2014, Hanson sent an IRS to the LRC which

stated:

> I am challenging the decision to reject my two books,
> The Shaolin Grandmasters' Text (a religious text) and
> Sailing a Serious Ocean.  Please provide me with a

7

> written explanation as to what material was found to
> be a threat to institutional security in either book,
> why you feel it rose to the level of denying me my
> First Amendment rights to freedom of religion AND
> freedom of speech, and on what pages the material in
> question can be found.  I would like to view the
> allegedly offensive material as well.  Thank you.

Doc. No. 1, at 17.  Scott Bungay, the LRC Chairperson, responded
to Hanson's IRS, referring him to PPD 5.26 and stating "you need
to write to the Warden."  Id.

On February 10, 2014, Hanson sent an IRS to NHSP Warden
Richard Gerry, grieving the LRC decision and asking for both
books.  Doc. No. 1, at 18.  On February 14, 2014, Gerry, citing
PPD 5.26(IV)(C)(2)(d), responded as follows: "I have reviewed
your appeal and scanned the rejected book [Shaolin Text].  I
find that sections of the book provide instruction into training
and use of punches and body strikes.  Such material does
jeopardize the institutional security toward others including
staff.  Your appeal is denied."  Id.

Hanson sent Gerry another IRS on February 25, 2014, urging
Gerry to reconsider his rejection of both books.  Doc. No. 1, at
19.  The IRS stated, among other things, that Gerry's finding
that Shaolin Text contained martial arts instruction was
erroneous, and that the Shaolin Text is a religious text.  Id.
Gerry declined to reconsider his decision.  Id.  On March 9,

2014, Hanson sent an IRS to Gerry proposing a compromise in
which Hanson would be provided with a copy of "just the Buddhist
philosophy section [of Shaolin Text] (being careful to leave
[out] any parts that discuss martial arts at all)."  Doc. No. 1,
at 23.  Gerry responded that the "proposed solution does not
comply with policy and is therefore denied."  Id.

On March 13, 2014, Hanson sent a grievance to DOC
Commissioner William Wrenn requesting that the LRC decision, and
the Warden's upholding of that decision, be reversed as to both
books.  Doc. No. 31-29.  In that grievance, Hanson states:

> The [Shaolin Text] is a religious text which, although
> it does discuss some very basic martial techniques,
> actually represents the only readily-available text
> which comes from a legitimate Shaolin source (the
> Order of Shaolin Ch'an) that I am aware of.  Although
> the LRC failed to provide me with any reason at all as
> to why either book was rejected, Warden Gerry claims
> that [Shaolin Text] contains "martial arts
> instruction," and is therefore a "threat to the
> security of the institution."  I wholeheartedly
> disagree with this bald statement, and have no problem
> taking this false accusation to court – and I can
> promise you that I will not be alone when I do.  As
> for the second book, I still have not received any
> reason as to why it has been rejected, and will gladly
> take the unjustified/unjustifiable rejection of this
> book to court, as well.  I would appreciate it if you
> could please see to it that my books are given to me
> without the need to file a federal law suit.

Doc No. 31-29, at 2-3.  On March 14, 2014, Christopher Kench
answered Hanson's grievance on Wrenn's behalf, stating: "We

respect the judgment of the LRC.  Your grievance is denied."
Doc. No. 31-29, at 1.

In late July or early August 2015, after Hanson filed this
action, Serious Ocean was provided to him, along with a
photocopy of the Shaolin Text that omitted pages 131 – 237 of
that text, as those pages contained martial arts instruction.
Fouts Decl., at 3.  Hanson has since been released from custody
and is in possession of both books.

## Discussion

I.   Summary Judgment Standard

Summary judgment is warranted where "there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also
Xiaoyan Tang v. Citizens Bank, N.A., 821 F.3d 206, 215 (1st Cir.
2016).  "An issue is 'genuine' if it can 'be resolved in favor
of either party,' and a fact is 'material' if it 'has the
potential of affecting the outcome of the case.'"  Xiaoyan Tang,
821 F.3d at 215 (internal quotation marks and citations
omitted); see also Commodity Futures Trading Comm'n v. JBW
Capital, LLC, 812 F.3d 98, 105 (1st Cir. 2016) ("'[T]he mere
existence of some alleged factual dispute between the parties

10

will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.'" (emphasis in original) (citation omitted)).  At the summary judgment stage, the court draws "'all reasonable inferences in favor of the non-moving party,' but disregard[s] 'conclusory allegations, improbable inferences, and unsupported speculation.'" <u>Fanning v. Fed. Trade Comm'n</u>, 821 F.3d 164, 170 (1st Cir. 2016) (citation omitted).

To obtain summary judgment, "[t]he moving party must affirmatively demonstrate that there is no evidence in the record to support a judgment for the nonmoving party." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 332 (1986).  Once the moving party makes the required showing, "'the burden shifts to the nonmoving party, who must, with respect to each issue on which [it] would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in [its] favor.'" <u>Flovac, Inc. v. Airvac, Inc.</u>, 817 F.3d 849, 853 (1st Cir. 2016) (citation omitted).  "This demonstration must be accomplished by reference to materials of evidentiary quality, and that evidence must be more than 'merely colorable.'" <u>Id.</u> (citations omitted).  The nonmoving party's failure to prove one essential element "'necessarily renders all other facts

immaterial.'"  Delgado v. Aero Inv. Corp., 601 F. App'x 12, 15
(1st Cir. 2015) (quoting Celotex, 477 U.S. at 323).  The
nonmoving party's failure to make the requisite showing
"entitles the moving party to summary judgment."  Flovac, Inc.,
817 F.3d at 853.


II.  Access to the Courts Claim

     A.  PLRA Exhaustion Requirement

     Under the Prison Litigation Reform Act of 1995, 42 U.S.C.
§ 1997e(a) ("PLRA"), "[n]o action shall be brought with respect
to prison conditions under section 1983 of this title, or any
other Federal law, by a prisoner confined in any jail, prison,
or other correctional facility until such administrative
remedies as are available are exhausted."  42 U.S.C. § 1997e(a).
To exhaust administrative remedies under the PLRA, a prisoner
must complete the administrative review process available at the
place where he is confined, in accordance with the applicable
procedural rules of that facility.  See Ross v. Blake, 136 S.
Ct. 1850, 1856 (2016); Jones v. Bock, 549 U.S. 199, 218 (2007);
Woodford v. Ngo, 548 U.S. 81, 93 (2006).  The PLRA's exhaustion
requirement "applies to all inmate suits about prison life,
whether they involve general circumstances or particular

12

episodes." Porter v. Nussle, 534 U.S. 516, 532 (2002).

Exhaustion is mandatory, and a claim must be dismissed if exhaustion of that claim is not completed prior to its filing. See Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002). At summary judgment, to prevail on the affirmative defense of failure to exhaust, "the defendant must show that no reasonable jury could find that [the plaintiff] exhausted the administrative remedies available to him before commencing [his] action." Polansky v. McCoole, No. 13-cv-458-JL, 2016 DNH 012, 2016 U.S. Dist. LEXIS 6476, at *8, 2016 WL 237096, at *3 (D.N.H. Jan. 20, 2016).

B.   DOC Administrative Grievance Procedures

At all times relevant to this matter, the DOC employed a three-level procedure for handling inmate grievances. The first level is an IRS "addressed to the lowest level staff person with the authority to address the issue raised." PPD 1.16(IV)(A)(1), Doc. No. 31-14, at 2. "A request slip regarding any issue must be received within 30 calendar days of the date on which the event complained of occurs." Id. An inmate dissatisfied with the response to an IRS may, within thirty days of the denial of the IRS, direct a Grievance Form to the NHSP Warden. PPD

1.16(IV)(B)(1); Doc. No. 31-14, at 3.  An inmate dissatisfied
with the Warden's response to his grievance, within thirty days
of the denial of his grievance to the Warden, may appeal the
matter to the DOC Commissioner.  PPD (IV)(C)(1); Doc. No. 31-14,
at 4.  The timeframes contained within PPD 1.16 and the use of
appropriate forms, at each level of the DOC grievance process,
are mandatory.  PPD (IV)(E)&(F); Doc. No. 31-14, at 4-5.


        C.   Failure to Exhaust

        Defendants are entitled to summary judgment on Hanson's
claim that he was denied access to the courts because he failed
to follow the DOC's mandatory administrative grievance
procedures concerning his alleged lack of access to the courts
prior to filing this action.  Hanson did not, within thirty days
of having his First Circuit appeal denied, file an IRS.
Further, Hanson never filed a grievance with either Warden, or
the DOC Commissioner, concerning the loss of his First Circuit
appeal.  Accordingly, Hanson did not properly exhaust the
administrative remedies available to him before filing his claim
alleging that he was denied access to the courts.  Defendants
are entitled to judgment as a matter of law on Hanson's denial
of access to the courts claim, and the district judge should

grant summary judgment in their favor on that claim.

III.  Claims Relating to Books

    A.   Injunctive Relief

Hanson initially sought an injunction directing defendants to provide him with both the Shaolin Text and Serious Ocean in their entirety.  Prior to Hanson's release, defendants' counsel made arrangements with Wrenn to return Serious Ocean to Hanson and to provide Hanson with a photocopy of the Shaolin Text, with the exception of the section that concerned martial arts. Hanson has now been released from DOC custody, and it is undisputed that he is in possession of both books.  Accordingly, Hanson's injunctive relief claims relating to the books are moot.  Defendants are entitled to summary judgment on Hanson's RLUIPA and First Amendment claims seeking injunctive relief.

    B.   RLUIPA Damages Claims

RLUIPA does not permit actions for damages against state officials in their official capacities, as those defendants are protected from such claims by sovereign immunity.  See Sossamon v. Texas, 563 U.S. 277, 293 (2011).  Further, although there is no binding precedent in the First Circuit, the majority of

courts that have addressed the issue have held that RLUIPA does not authorize claims for damages asserted against defendants sued in their individual capacities.  See Howard v. Skolnik, 599 F. App'x 323, 323 (9th Cir. 2015); see also Cryer v. Spencer, 934 F. Supp. 2d 323, 333 (D. Mass. 2013) (collecting Third, Fourth, Fifth, Seventh, Tenth, and Eleventh Circuit cases); Stile v. U.S. Marshals Serv., No. 15-cv-494-SM, 2016 U.S. Dist. LEXIS 83750, at *6, 2016 WL 3571423, at *2 (D.N.H. May 9, 2016), R&R adopted, No. 15-cv-494-SM, 2016 U.S. Dist. LEXIS 83747, 2016 WL 3582027 (D.N.H. June 27, 2016).  For these reasons, the court finds that all of the defendants, in both their individual and official capacities, are entitled to summary judgment on Hanson's RLUIPA damages claims.

        C.    First Amendment Claims

        As stated above, the court has identified Hanson's First Amendment claims for damages against the NHSP LRC, Bungay, Wrenn, Kench, and Gerry, as follows:

        1.   Defendants violated Hanson's First Amendment free exercise rights by denying him access to all or part of the Shaolin Text; and

        2.   Defendants violated Hanson's First Amendment free speech rights by denying him access to the Shaolin Text and Serious Ocean books mailed to him at the NHSP.

Defendants argue that the court should grant summary judgment as to Hanson's First Amendment claims.  Hanson argues that there exist triable issues of material fact concerning his First Amendment claims.

       1.   <u>Shaolin Text</u>

"[I]mprisonment does not automatically deprive a prisoner" of First Amendment protections.  <u>Beard v. Banks</u>, 548 U.S. 521, 528 (2006).  An inmate's First Amendment rights to receive and read books, and to exercise his religion freely during his incarceration, however, may be restricted by prison officials if the restriction is "reasonably related to legitimate penological interests."  <u>Id.</u> (internal quotation marks omitted) (prison policy of denying newspapers and magazines to especially dangerous inmates deemed valid as it was shown to be reasonably related to legitimate penological interests); <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 349-50 (1987) (prison regulation burdening inmate's free exercise right need only be reasonably related to legitimate penological interests).

The determination of whether to grant summary judgment on Hanson's First Amendment claims concerning the <u>Shaolin Text</u>, therefore, turns on whether the restriction imposed on Hanson

that denied him access to that book was the product of a
regulation that was reasonably related to a legitimate
penological objective.  The undisputed facts in the record
indicate that prison officials have a legitimate interest in
protecting institutional security.  The undisputed facts in the
record also demonstrate that the policy of rejecting written
materials that are mailed to prisoners when those materials
contain "[d]escriptions or depictions that encourage activities
which may lead to the use of physical violence or group
disruption," PPD 5.26(IV)(B)(2)(h), is reasonably related to the
prison's interest in the security of the institution, inmates,
and institutional staff.  Further, it is undisputed that the
application of this policy resulted in the denial of the Shaolin
Text that forms the basis of Hanson's free exercise and free
speech claims.

Hanson disputes the findings made by the LRC, and argues
that the Shaolin Text, taken as a whole, discourages violence,
and therefore does not violate the PPD criteria for prohibited
materials.  Hanson does not dispute, however, that the book
contains depictions and descriptions of martial arts.  Further,
Hanson does not dispute Gerry's findings that the text depicts
and describes punches and body kicks, or the LRC's finding that

the book contained information about the use of weaponry.[3]
Taking as true Hanson's assertion that the book generally
advocates against violence, the undisputed facts in this matter
nevertheless show that the contents of the book violate PPD
5.26, a regulation that is reasonably related to a legitimate
penological objective.

Accordingly, the undisputed facts demonstrate that the
LRC's disallowance of the Shaolin Text did not constitute an
actionable violation of Hanson's rights under the Free Exercise
or Free Speech Clauses of the First Amendment.  As the LRC did
not violate Hanson's free exercise and free speech rights with
respect to the Shaolin Text, the supervisory defendants --
Gerry, Kench, and Wrenn -- who declined to overturn the LRC's
decision, also did not violate Hanson's First Amendment rights
as to that book.  Defendants are therefore entitled to summary
judgment on Hanson's First Amendment free exercise and free
speech claims relating to the Shaolin Text, as a matter of law.

    2.   Serious Ocean

---

[3]One section of the Shaolin Text both describes and depicts
"Hand and Elbow Weapons."  Shaolin Text, at p. 143-48.

A restriction on the mail an inmate may receive in prison implicates the First Amendment.  See Thornburgh v. Abbott, 490 U.S. 401, 407 (1989).  The defendants' withholding of Serious Ocean, therefore, implicated Hanson's First Amendment free speech rights.  Such an impingement violates the constitution, unless it was imposed pursuant to a prison policy that was "reasonably related to legitimate penological interests, and [was] not an exaggerated response to such objectives."  Beard, 548 U.S. at 528 (internal quotation marks and citations omitted); Turner v. Safley, 482 U.S. 78, 89 (1987).

In evaluating the reasonableness of a restriction on constitutional rights, the court generally examines four relevant factors (commonly known as the "Turner factors"):

> (1) whether there is a valid, rational connection between the regulation and the legitimate government interest put forward to justify it; (2) whether alternative means to exercise the right exist; (3) the impact that accommodating the right will have on prison resources; and (4) the absence of alternatives to the prison regulation.

Kuperman v. Wrenn, 645 F.3d 69, 74 (1st Cir. 2011) (citing Turner, 482 U.S. at 89-90 (internal citations omitted).  In examining a restriction under the Turner factors, substantial deference must be given to prison administrators' judgment.  See Overton v. Bazzetta, 539 U.S. 126, 132 (2003).  While prison

administrators are "required to demonstrate a rational
connection between the policy and the alleged interest, which
must amount[] to more than a conclusory assertion," Young v.
Beard, 284 F. App'x 958, 961 (3d Cir. 2008) (internal quotation
marks and citations omitted); see also Beard, 548 U.S. at 535
("Turner requires prison authorities to show more than a
formalistic logical connection between a regulation and a
penological objective"), the overall burden of proof on the
validity of prison regulations and policies rests on the
prisoner.  Overton, 539 U.S. at 132.  The burden "is not on the
State to prove the validity of prison regulations but on the
prisoner to disprove it."  Id.

### a.   Valid Rational Connection

It is undisputed that Serious Ocean was withheld from
Hanson only because it arrived in the same package as the
Shaolin Text, and that Serious Ocean did not, itself, otherwise
violate any prison policy.  Defendants assert that the prison
maintained a "same package" policy which required that all
contents of a package be returned if anything in the package was
rejected by the LRC.  Fouts Decl., at 2.  Defendants further
assert that "[o]ne of the purposes served by this rule was to

help DOC staff avoid getting into disputes with inmates or their correspondents about the contents of packages of mail and other written materials sent to the NHSP." Id.  Hanson challenges both the existence of a "same package" policy and whether such a policy, if it existed, was rationally related to a legitimate penological interest.

Avoiding disputes between staff and inmates is plainly a legitimate penological objective, related to the institution's interest in safety and security.  Although Hanson's assertion that PPD 5.26 does not explicitly contain a "same package" policy is correct, the record here does not establish that PPD 5.26 is the only source of regulations on incoming mail at the prison.  The lack of an explicit "same package" policy in PPD 5.26, therefore, is insufficient to dispute Fouts's statement that such a policy existed at the time prison officials withheld Serious Ocean.

Fouts states that the "same package" policy furthers the prison's interest in avoiding disputes between inmates and staff members.  According to Fouts, if the contents of a single package are not treated similarly, the likelihood of a dispute between inmate and staff is increased.  Fouts Decl., at 2.  If the staff member is required to reject an entire package,

however, there is less opportunity for a dispute to arise based on a staff member's decision-making. Id. While Fouts's stated rationale for the "same package" policy is somewhat conclusory, Fouts is a prison official tasked with overseeing the safety and security of inmates at the NHSP, see id., at 1, and the court finds that he has sufficiently stated a rational connection between the "same package" policy and the prison's interest in preventing disputes between staff and inmates to accord deference to Fouts's statements. See Jones v. Conrad, No. 5:10CV00355-BSM-JJV, 2013 WL 1290421, at *4, 2013 U.S. Dist. LEXIS 44535, at *11-*12 (E.D. Ark. Feb. 15, 2013) (recommending that defendants' motion for summary judgment be granted as to prisoner's claim that rejecting an unobjectionable book sent to the prisoner that arrived with an objectionable book, pursuant to a "same package" policy, violated his First Amendment rights; finding that defendants' asserted justifications for the policy, including increasing efficiency and economy of the prison mailroom and protecting prison staff from false claims, were owed deference by the court), R&R adopted, 2013 WL 1282340, *1, 2013 U.S. Dist. LEXIS 44534, at *1 (E.D. Ark. Mar. 28, 2013), aff'd, 557 F. App'x 636, 637 (8th Cir. 2014).

Even crediting Hanson's unsworn statements in his objection

to summary judgment (doc. no. 34) as true, and construing the
facts in the record in Hanson's favor, his arguments in
opposition to summary judgment amount to no more than conclusory
statements that genuine issues of fact exist as to the existence
or rationality of the "same package" policy.  Prison officials
have shown that a policy existed which is rationally related to
an interest in prison safety and security.  Hanson has failed to
demonstrate that there is a triable issue of material fact
concerning whether a valid rational connection exists between
the "same package" policy and a legitimate penological interest.

> b.   <u>Alternative Means of Exercising Hanson's
>      First Amendment Right to <u>Serious Ocean</u></u>

While not specifically addressed by the parties, the record
in this case contains evidence to show that Hanson had
alternative means of exercising his First Amendment right to
receive <u>Serious Ocean</u>.  For instance, Hanson could have agreed
to have the package returned to Amazon, and then ordered <u>Serious
Ocean</u> by itself, thereby avoiding the risk of having it rejected
due to other materials contained in the same package.  Hanson
has not met his burden to demonstrate, by competent evidence,
that there is a triable issue of fact as to whether Hanson had
no other means of acquiring <u>Serious Ocean</u> through the prison's

24

mail system.  Accordingly, this factor, in its absence, weighs in favor of finding that the policy is a valid restriction on Hanson's First Amendment rights.

### c.    Impact of Accommodation

The only fact in the record concerning the impact of accommodating Hanson's First Amendment rights, by allowing Hanson to receive the unobjectionable materials that arrived at the prison in a package that contained objectionable materials, is Fouts's statement that such an accommodation would make disputes between prison staff and inmates "more likely."  Fouts Decl. at 2.  Hanson has failed to assert evidence to dispute that fact.  This factor weighs in favor of finding the policy to be a valid restriction on Hanson's First Amendment rights while incarcerated.

### d.    Existence of Ready Policy Alternatives

There is no evidence in the record that would allow a jury to find any "ready policy alternatives" to the "same package" policy.  While the staff might be able to tender the unobjectionable parts of a package to an inmate and withhold only the parts deemed objectionable by the LRC, Hanson has not

demonstrated that doing so would be a "ready policy alternative," as the proposal for allowing staff to break up and distribute different parts of a package does not address the increased risk of inmate-staff conflict that arises (according to Fouts, to whom deference on this question is due) when the contents of packages are treated as divisible by mailroom staff. Accordingly, Hanson has failed to show that there is a jury question as to this Turner factor, which weighs, in its absence, in defendants' favor.

### e.   Summary

Hanson has not shown that there is a jury question on whether the prison's "same package" policy existed, and he has not met his burden of disproving that the policy was reasonably related to a legitimate penological objective, concerning the avoidance of disputes between inmates and prison staff. Accordingly, defendants are entitled to summary judgment on Hanson's First Amendment claim concerning Serious Ocean.

### 3.   Lt. John Masse

The April 13, 2015, Report and Recommendation ("R&R") (doc. no. 18) and April 13, 2015, Order (doc. no. 19) mistakenly

caused Lt. John Masse to be served as a defendant to the free speech claim (Claim 2) in this action.  In the identification of claims in that R&R, Masse is not listed as a defendant to Claim 2.  That omission was intentional; Hanson had not alleged facts stating a claim for relief against Masse for violating Hanson's free speech rights, with respect to matters alleged in Claim 2.

The inadvertent inclusion of Masse among the list of defendants to be served should be corrected at this time, pursuant to this court's authority under 28 U.S.C. § 1915(e)(2). If the district judge does not otherwise moot the issue by granting summary judgment on Hanson's free speech claim as to all of the defendants, as recommended herein, the district judge should still direct that Masse be dropped from this action.

### Conclusion

For the foregoing reasons, the district judge should grant defendants' motion for summary judgment (doc. no. 31), and Lt. John Masse should be dropped as a defendant to Hanson's free speech claims.  Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district

court's order.  See Garayalde-Rijos v. Mun. of Carolina, 747

F.3d 15, 21-22 (1st Cir. 2014).


_Andrea K. Johnstone_
Andrea K. Johnstone
United States Magistrate Judge

August 17, 2016

cc:   Michael Hanson, pro se
      Kenneth A. Sansone, Esq.